**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DONALD H. CHOY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 19-cv-4369 |
| v. | ) | |
| | ) | The Honorable John Z. Lee |
| | ) | |
| CHICAGO PARK DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, DONALD H. CHOY, by counsel, Moor Law Office, P.C., respectfully states in response to the Motion for Summary Judgment filed by the CHICAGO PARK DISTRICT ("CPD") as follows:

## I. INTRODUCTION

The Plaintiff, sixty-five when he interviewed in August 2018 for Foreman, and sixty-six when he interviewed on January 8, 2019 for Foreman, was the oldest person to interview each time and was rejected both times. Because he was more qualified than those who applied in August, and more qualified than the person who was promoted in January 2019, and because the Defendant's explanations for the Plaintiff's non-promotion are false, the Defendant's motion should be denied.

## II. FACTS

Plaintiff, a Class II Floriculturist at the CPD's conservatories since 1999, applied for promotion to a Foreman position in August 2018 and again in January 2019. (Pltf. Ex. 15, Choy, at pp. 56:25-57:23, 69:2-10). Interviews were conducted in August 2018 and January 2019. *Id.*

The position were described as "Job Posting 3916" and 4067." (Plaintiff's Rsp. to Statement of Facts (PRSOF) at ¶¶ 49 and 51). The interviewers were Mary Eysenbach, the Director of Conservatories, and Peter Vrotsos, the Deputy Director of Horticulture, with an H.R. representative present. *Id.* and *Id.* at ¶ 15. Six employees were selected to interview including Plaintiff in August 2018. *Id.* at ¶ 49, and ten in January 2018. (PRSOF at ¶ 57). The interview questions were prepared by the conservatory and approved by the CPD's Human Resources Department. *Id.* at ¶ 16. Each applicant's answers to the questions were scored by the interviewers on three scales: a) understanding of position, b) prior related work experience, and c) overall qualification for position. *Id.* at ¶ 12. Promotions are made based on the scores, and since none of the applicants scored over a three none were promoted. (Pltf. Ex. 8, Drumm at pp. 32:2-8, 47:19-48:2; PRSOF at ¶ 49).

When Plaintiff again interviewed for the Foreman vacancy in January 2019, Plaintiff was scored by Eysenbach and Vrotsos with a 1.83 average score, and Theresa Reardon, who was scored with a 3.33 average score, was promoted. *Id.* at ¶ 51.

Promotion interviews are governed by the CPD Employment Plan. (Ex. 8, Drumm, at pp. 14:9-15:14). The CPD Employment Plan states that comprehensive mandatory training of interviewers will be conducted in interview conduct. (Ex. 6, Employment Plan at §V.C.4, CPD000226). CPD interviewers receive no training on how to interview, much less "comprehensive mandatory training." (Ex. 1, Eysenbach at p. 37:14-17; Pltf Ex. 2 Barrett at p. 19: 10-20; Pltf. Ex. 3 Gilbert at pp. 13:12-14:24; Pltf Ex. 4 Bogdan at p. 20:24-23:4; Pltf. Ex. 5 Vrotsos 25:22-26:24, Pltf. Ex. 7, Drumm, pp. 18:14-19:3; Pltf. Ex. 8, Drumm, at p. 51:6-10 and Pltf . Ex. 6 at CPD000026). Marty Drumm, CPD's H.R. Manager, testified that he does not know if it was the policy of the CPD to provide training to the people who conduct promotion interviews

at the conservatories. (Ex. 7, Drumm, at pp. 18:24-19:3). While CPD's H.R. did conduct Shakman Training, explain how to use the interview scoring sheet, and the Law Department gave virtual EEO training, there was no training on how to prevent discrimination in promotion interviews (Pltf. Ex. 7, Drumm, pp. 18:14-19:3; Pltf Ex. 8, Drumm p. 50:6-51:10; Pltf. Ex. 3, Gilbert p. 29:8-12; Pltf. Ex. 4, Bogdan, p. 20:24-21:22; Pltf. Ex. 1, Eysenbach at pp. 16:14-17:8; Pltf. Ex. 20, Smith, at pp. 25:16-30:6). Drumm testified that he does not know if bias in promotions was addressed in the training that interviewers received as general park district employees. (Pltf. Ex. 8, at p. 51:6-10). Stephanie Smith, an H.R. employee who often monitored promotion interviews, testified that she could not say that the CPD's policy against race, gender or age discrimination was enforced in the interview process. (Pltf. Ex. 20, Smith, at p. 30:1-6).

The Employment Plan for the Chicago Park District provides that follow up questions may be asked so long as they are related to an approved question. The guidelines do not place any limit on how many follow up questions can be asked. (Ex. 21, Breitenbach, at p. 18:19-21; Ex. 6, CPD Employment Plan at § VI.K.4, CPD 000239). But Eysenbach testified that CPD allowed interviewers to ask only "one follow up question" even though the policy did not limit the number of follow up questions. (Ex. 1, Eysenbach at p. 46:13-47:5; Ex. 14, Breitenbach, at p. 18:19-21; Ex. 16, Smith, at pp. 17:21-18:3). Some of interviewers chosen by Eysenbach believed that the only follow up question they could ask was "please explain." (Pltf. Ex. 3, Gilbert, at p. 26). Interviewers frequently asked no follow up questions, letting an answer "sit where it is." (Pltf. Ex. 1, Eysenbach, at pp. 143:8-143:11, 149:12-155:1). For instance, Eysenbach herself testified that she was "prohibited" from asking follow up questions (Pltf. Ex. 1, Eysenbach, at p. 151:22-153:11). Interviewers are not encouraged to talk to a candidate's supervisor before scoring (Ex. 1, Eysenbach at p. 43:3). The interview policy does not require an interviewer to have any

familiarity with an applicant's actual job performance, and Drumm does not know why. (Pltf. Ex. 8, Drumm, at p. 17:16-24). An applicant's personnel file is not present at the interview, the interviewers do not have access to it, (Ex. 1, Eysenbach at pp. 40:14, 162:16-17), and it is not reviewed before the interviews. ( Ex. 2, Barrett, at p. 10-23; Ex. 8, Drumm, at p. 20:14-21).

Allegedly, the CPD's policy is *not* to promote only those who interview well. (Pltf. Ex. 7, Drumm, at p. 22:19-22; Pltf. Ex. 16, Smith, at p. 18:12-19). Though Eysenbach, Barrett, and others acknowledged that a good worker can give a poor interview and bad worker a good interview, nothing is done to control for that reality (including by asking follow up questions) and promotions are decided based solely how candidates "perform" and score in the interview but not on their actual job performance or duties. (Ex. 1, Eysenbach, at p. 41:8-22; Ex. 8, Drumm at p. 21:24-22:17; Ex. 2 Barrett, at p. 45:2-12). Thus, though it is not the "policy" and goal of the CPD to only promote people who interview well, (Pltf. Ex. 7, Drumm, at p. 22:19-22; Pltf. Ex. 16, Smith, at p. 18:12-19), interviewees are actually only scored on how well they answer a question. (Pltf. Ex. 1, Eysenbach, at p. 43:2-12; Pltf. Ex. 2, Barrett at p. 44:19-20). Nothing is done to sort out interview skills from actual job performance and skills. *Id*. at 45:12. The CPD scores, and thus determines promotions, solely on the basis of how a candidate interviews (Ex. 1, Eysenbach, at p. 42:3-12), and not on their actual job performance or qualifications, (Ex. 1, Eysenbach at p. 41:5-7), contrary to the CPD policy of not promoting people who merely interview well. (Ex. 8, Drumm, p. 22).

The CPD also claims that its interview process generates "objective" scores based on the approved questions (Pltf. Ex. 2, Barrett, at p. 33:4-16, 134:14; Pltf. Ex. 20, Smith, at p. 33:1-3, Pltf. Ex. 5, Vrotsos, at p. 27:11-2) but the interviewers score the interviewees answers on a scale of 1 to 5 (ranging from far below to far above requirements) based solely on their opinion of the

candidates answers which is a subjective assessment. (Pltf. Ex. 1, Eysenbach, at p. 158:6-11; Pltf Ex. 2, Barrett at p. 134:12).

Choy had more horticultural education, more horticultural experience and more supervisory experience than each of the other five applicants who applied for the Foreman post under Job ID 3916. (Pltf. Ex. 15, Choy, at pp. 65:13-68:9). All of the applicants were younger. (Pltf. Ex. 12., Choy Decl. at ¶ 8).

Choy had more horticultural education, more horticultural experience and more supervisory experience than Theresa Reardon did relative to the Foreman post under Job ID 4067. (Pltf. Ex. 15, Choy, at pp. 80:17-81:1). All of her supervisory experience was prior to 2005 and Plaintiff had been a *defacto* foreman for a year at the CPD's Kilbourn Greenhouse in 2014, PRSOF at ¶¶ 65, in addition to having substantial horticultural supervisory experience before coming to the CPD. (PRSOF at ¶ 19 and Plaintiff's Statement of Additional Facts at ¶ 14).

Reardon was younger than Choy. PRSOF at ¶ 53. In the interview, Eysenbach claimed that Choy described supervisory experience which was not on his application, though it was. (*Id.* and see Plaintiff's Statement of Additional Facts at ¶ 14). Eysenbach did not ask Choy about he alleged concern that he had described pre-CPD horticultural supervisory experience that was not on his resume. (Ex. 1, Eysenbach, at p. 174:13-16). His application showed that he has supervised up to 50 people during the spring and summer at a retail nursery, and the only retail nursey listed was the Chalet in Wilmette.

## III. ARGUMENT

Through the Defendant's systematic violation of CPD policy by the misapplication of the CPD's interview guidelines in the Employment Plan, the CPD's conservatories promotes only those it likes even if they are less qualified. H.R. and the conservatory interviewers misapply the

Employment Plan by a) not being comprehensively trained in interviewing as required in the Employment Plan in interview conduct and b) by claiming that they could not ask, or could not ask more than one, follow up question to explore an answer and thus the actual qualifications of a candidate. This misapplication permits the Defendant to promote for improper reasons.

Plaintiff does not need direct evidence of an intent to discriminate on the basis of age, if the Plaintiff establishes a *prima facie* case under *McDonald*, and shows the legitimate reason(s) offered by the Defendant are false, then discrimination may be inferred by the jury. *Perfetti v. First Nat. Bank of Chicago*, 950 F.2d 449, 451 (7th Cir. 1991).

**A. The *McDonald* Factors**

To "establish a *prima facie* case of failure to promote, [Plaintiff] must show that (1) she is a member of a protected class; (2) she applied for, and was qualified for an open position; (3) she was rejected; and (4) the employer filled the position with a person not in her protected class, or the position remained open. *Howard v. Lear Corp. EEDS & Interiors*, 234 F.3d 1002, 1005–06 (7th Cir. 2000)(*citing Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 454 (7th Cir.1999)).

Plaintiff was 65 and 66 at the time of the promotion denials which in an age discrimination case, puts him in a protected class. *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 454 (7th Cir. 1999).

For the second prong of the *McDonald* test the Plaintiff does not need to show that he was the most qualified for the position, only that he was qualified. *Outley v. City of Chicago*, 354 F. Supp. 3d 847, 863 (N.D. Ill. 2019) (*citing Baron v. City of Highland Park*, 195 F.3d 333, 340 (7th Cir. 1999)). The above shows that Choy was qualified.

The Plaintiff's application to become a Foreman in the August 2018 and January 2019 interviews was rejected, so he meets the third prong of *McDonald.*

For the fourth prong of the McDonald test the question is whether the Defendant "promoted someone outside of the protected class who had similar or lesser qualifications." *Outley v. City of Chicago*, 354 F. Supp. 3d 847, 864 (N.D. Ill. 2019). The facts recited above show that Reardon had lesser qualifications than Choy.

The evidence shows is that Choy managed more areas than Reardon, organized special projects such as the 2006 World Festival, and supervised people actively while employed by the CPD, specifically at Kilbourn Greenhouse in 2014.

The law is that a failure to promote is actionable under the fourth prong of *McDonald* if the position was filled with a younger person *or* it remains open. *EEOC v. Our Lady of the Resurrection Med. Ctr.*, 77 F.3d 145, 148 (7th Cir. 1996). The August 2018 interview which resulted in no one filling the position remained open until January 2019, and is therefore actionable. The August 2018 interview is within 300 days of the filing of Choy's charge. The charge was filed September 6, 2018 (PRSOF at ¶ 4), and 300 days prior to that is November 10, 2017. All of the applicants were younger, (Ex. 12 at ¶ 8), and there is no evidence that any of the five others were within ten years of age of the Plaintiff.

As for the Reardon promotion, while she is closer in age to Choy, and within his protected group, the Court in *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996), held that the ADEA protects against discrimination based on age, not membership in a class so that the "fact that one person in a protected class lost out to another person in the protected class is thus irrelevant, so long as he lost out because of age." *Id.* It is true, of course, that the 7th Circuit later interpreted *O'Connor's* Court subsequent use of the words "substantially younger" as meaning that an age difference of ten years is pr3sumed substantial, but the ten year "presumption" is rebuttable. *Hartley v. Wisc. Bell*, 124

F.3d 887, 893 (7th Cir. 1997). If the age gap is smaller then ten years, there still may be an actionable claim "where the evidence nevertheless reveals the employer's decision to be motivated by . . . age." *Id.*

Here, there is evidence that age motivated the employer's decision as to the Reardon promotion. Not only had the Plaintiff learned that his boss, Neil Gilbert, had repeatedly asked a Mark Kluber, the oldest employee at the conservatories when he was going to retire, but a Floriculturist named Sally Wheel had heard Mary Eysenbach ask Kluber at least ten times on separate occasions when he was going to retire, and knew that this repeated line of questioning upset Kluber. These are not stray remarks. Nor do they originate from mere coworkers, Eysenbach is the Director of Conservatories.

**B. Defendant's Assertion that Reardon was More Qualified than Choy is Pretextual**

The Defendant's Statement of Facts refers to "discipline" that occurred long ago in the past. The evidence is that H.R. decides whether discipline disqualifies a candidate from being interviewed. (Plaintiff's Statement of Additional Facts at ¶ 7). The evidence is that H.R. can only look back 12 months. *Id.* The evidence is that promotion decisions are not based on prior discipline. (Ex. 1, Eysenbach at p. 202:11). Therefore, the inclusion of paragraphs 22 and 23 in the Defendant's Statement of Fact is improper and amounts to an *ad hominem* attack. Further, the inclusion of paragraphs 25 through 27 are improper as had the events occurred as described they likely would have resulted in discipline, and none is described. Plaintiff denies the allegations, but more importantly, the interviewers Eysenbach and Vrotsos did not testify that these contested events played any role in their August 2018 or January 2019 decision to not promote. The inclusion of this material is pretext upon pretext. At the very least pursuant to the instructions in

L.R. 56.1(e)(2), certain paragraphs in Defendant's Statement of Facts should be stricken and not considered at all in deciding Defendant's motion.

As to the claim that Reardon performed better than Choy in the interviews, this too is false. They both missed a plant ID question. Vrotsos does not indicate anything else in his notes on Reardon's interview but at deposition added that he thought her answer "really remarkable" because though she could not identify one plant, she could describe every part of it, what lighting it required and soil needs. (Ex. 5, Vrotsos, at p. 35:3-8). If her answer on January 2019 was actually "truly remarkable" why did he not note it. Neither interviewer were aware of Reardon's job performance changing between December 2017 when she scored an average 1.83 in an interview for foreman to a 3.33 in January 2019. (Plaintiff's Statement of Additional Facts at ¶ 13; Ex. 5, Vrotsos at p. 34:5-17). Vrotsos claimed that in January 2019 Reardon "produced" some supervisory skills he was not aware of, *Id.,* but he had never interviewed her before and all she described was her pre-CPD experience. *Id.* at p. 35:19-36:5. That experience had not changed between December 2017 and January 2019. Nor was that pre-CPD supervisory experience "fresher" that Choy's supervisory experience, which dates from 2014 in the CPD/

In *Hall v. City of Chicago*, 52 Fed.Appx. 259 (7th Cir. 2002), a City of Chicago employee subjected to an interview process that also resulted in her answers being scored on a scale of one to five which were averaged as here, complained that the City's reliance in interview scores was pretextual because her training, knowledge and experience "belied" her low interview scores and the City's decision to not promote her. *Hall*, 52 Fed.Appx. at 263. The court held that the argument failed to raise a question of fact given that reliance on subjective interview scores was appropriate unless the interview criteria and scoring system were a mask for discrimination. *Id. citing Millbrook v. IBP, Inc.,* 280 F.3d 1169 (7th Cir. 2002). The court concluded that "if Hall had

presented evidence that her interview scores were themselves discriminatory, or that they were not based in fact, Hall might have raised a triable issue of fact regarding pretext. *Hall*, 52 Fed.Appx. at 264 (*citing Collier v. Budd Co.*, 66 F.3d 886, 892 (7th Cir. 1995) (examining facts of job requirement and Plaintiff's performance to assess proffered reason for discharging plaintiff)).

Here, the facts of record show that the interview scores are not based in fact, allowing the interview process itself to become a mask for discrimination. Eysenbach not only asked no follow up questions, but she *mispresented* known facts in her scoring of Choy. Eysenbach misrepresented Plaintiff's pre-CPD managerial experience.

Claiming that only one follow up question could be asked is false. Eysenbach claiming that she was "prohibited" follow up questions was false. Eysenbach claiming that Plaintiff had not described his pre-CPD horticultural supervisory experience was false. The stated policy of *not* promoting only those who interview well is false. Absent these falsehoods, Choy would likely have been promoted. The multitude of falsehoods masked the known preference of the management at the conservatories to promote younger workers. The motion should be denied.

WHEREFORE, Plaintiff, DONALD J. CHOY, respectfully requests that this Court deny the motion for summary judgment filed by the CHICAGO PARK DISTRICT and set this case for trial. Plaintiff further prays for any other relief that this Court deems just.

Respectfully submitted,

/s/ Edward R. Moor
Moor Law Office, P.C.
53 W. Jackson Blvd., Suite 1527
Chicago, Illinois 60604
312-726-6207
erm@moorlaw.net