## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DONALD CHOY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19 C 4369 |
| v. | ) | |
| | ) | Judge John Z. Lee |
| CHICAGO PARK DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Donald Choy claims that Defendant, the Chicago Park District, repeatedly failed to promote him due to his age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* The District has moved for summary judgment. For the following reasons, the District's motion is granted.

## I. Background[1]

### A. Internal Hiring at the District

The District operates public parks and recreation areas in the City of Chicago. Among them are the Garfield Park and Lincoln Park conservatories. Def.'s LR 56.1 Statement Uncontested Material Facts ("DSOF") ¶¶ 2, 7, ECF No. 69. Conservatory employees are classified as follows, in ascending order of seniority: (1) Seasonal Floriculturist; (2) Apprentice Floriculturist; (3) Class II Floriculturist; (4) Class I Floriculturist; and (5) Foreman. *Id.* ¶ 7. When a job opens up at one of the conservatories, the posting is made available to internal applicants first. *See id.* ¶

---

[1]    The following facts are undisputed or deemed admitted, unless otherwise noted.

14.  Internal applicants submit applications through an online application tracking system, and the Human Resources Department ("HR") conducts an initial screening to determine which applicants to interview.  *See id.*

After the initial screening, interview performance is the sole metric the District uses to determine who gets the promotion.  *See id.* ¶ 18.  Each applicant is interviewed by two management employees.  *Id.* ¶ 15.  The interview questions are determined in advance by HR and the interviewers and are the same for every applicant.  *Id.* ¶ 16. The questions assess the applicant's job-specific qualifications for the position, job-related skills, and "suitability for employment."  *Id.*

After the interview, the interviewers each assign the applicant a score from 1 (worst) to 5 (best) in each of the following categories: (1) "understanding of the position"; (2) "prior related work experience"; and (3) "overall qualification for position." *Id.* ¶ 17 (capitalizations omitted).  The interviewers' scores are averaged to create an "overall score," and the applicant with the highest overall score is promoted. *Id.* ¶ 18.  If no internal applicant has an overall score above 3.0, however, the position is reposted and opened to external applicants.  *Id.*

## B.  Choy's Experience and Pre-2018 Applications

Choy (who was sixty-six years old at the time he filed this lawsuit in 2019)[2] is a Class II Floriculturist at the conservatories.  *Id.* ¶¶ 21, 53.  He has worked in gardening continuously since at least 1970 and has held a number of supervisory positions throughout his career, including management positions at two nurseries.

---

[2]     The ages of many individuals (in particular, the pre-2018 candidates who were promoted over Choy) are not specified in the record, but they are included when available.

*See* Pl.'s Resp. Def.'s LR 56.1(a)(3) Statement Material Facts Supp. Mot. Summ. J. ("Pl.'s Resp. DSOF") ¶ 19, ECF No. 76.

The District hired Choy as an Apprentice Floriculturist in 1998 and promoted him to Class II Floriculturist in 1999. DSOF ¶ 21. A Class II Floriculturist's job duties include "propagation and maintenance of horticultural plant materials in District facilities while under general supervision of the Foreman; and propagating houses, nurseries and other indoor and outdoor floral areas." DSOF ¶ 8; *see* DSOF Ex. 9, CPD–Floriculturist, Class II Job Description, ECF No. 69-1. The day-to-day work of a Class II Floriculturist does not include supervising other employees, but Class II Floriculturists occasionally are required to supervise seasonal workers. *See* DSOF ¶ 8; DSOF Ex. 10, Drumm Dep. at 33:7–34:6, ECF No. 69-1; Pl.'s LR 56.1(b)(3)(C) Statement Additional Facts ("PSOAF") Ex. 3, Gilbert Dep. at 66:4-11, ECF No. 76.

Despite applying for promotions "in almost every year" from 1999 to 2018, Choy has not been promoted since 1999. DSOF Ex. 2, EEOC Charge, ECF No. 69-1. In 2006, Choy applied for a Foreman position, but Koch Unni, who was four years older than Choy, was promoted instead. DSOF ¶ 29. In 2014, Choy applied again for a Foreman position. *Id.* ¶ 30. Neil Gilbert, a Class I Floriculturist with ten years of experience, received the highest overall interview score and was promoted, while Choy received the lowest score of the ten candidates. *Id.* ¶¶ 30–31; *see* PSOAF Ex. 4, Bogdan Dep. at 11:11-19, ECF No. 76.

Choy applied for a promotion to Class I Floriculturist in October 2014. DSOF

¶ 33.  Matthew Barrett, Deputy Director of the conservatories, and Gilbert (who was then a Foreman) interviewed seven candidates, including Choy, who was then sixty-two years old.  *Id.* ¶¶ 30, 33.  They ultimately selected for promotion John Durnik and Maria Ramirez, both of whom had the highest interview scores.[3]  *Id.*  ¶¶ 12, 33.  Choy scored fifth highest out of the seven candidates.  *See id.*

In May 2017, Choy applied for the Deputy Director position.  *Id.* ¶ 36.  Mary Eysenbach, Director of the conservatories, and Barrett interviewed six candidates for the position and ultimately selected Peter Vrotsos (then fifty-two years old).  Vrotsos received the highest qualifying score for the position.  *Id.* ¶¶ 11, 37.  Choy (then sixty-five years old) scored lowest among the six candidates.  *Id.*

Two months later in July 2017, Choy again applied for a Foreman position.  Eysenbach and Barrett interviewed eight candidates, including Choy, for the position.  *Id.* ¶ 44.  They ultimately selected for promotion Sebastian Ritte and Jason Toth, who received the two highest scores.  *Id.*  Choy scored sixth highest of the eight candidates.  *Id.*

## C.  May and August 2018 Applications for Foreman

Another Foreman position opened up in May 2018, and Choy applied.  DSOF ¶ 49.  Eysenbach and Vrotsos (who was then Deputy Director) interviewed Choy along with five other candidates, but no candidate was promoted because no candidate received an overall score of 3.0 or above.  *Id.*  Choy scored fifth highest out of the six

---

[3]      One of the seven candidates, Gabriel Jenkins, had a higher score (4.34) than Durnik or Ramirez, but he received a separate outdoor floriculturist position.  *See* DSOF Ex. 12, Barrett Dep. at 168:6-17, ECF No. 69-1; DSOF Ex. 33, Interview Score Sheet, Job ID 1731, ECF No. 69-1.

candidates.  DSOF Ex. 48, Interview Score Sheet, Job ID 3961, ECF No. 69-1.

The job was reposted in August 2018, and Choy applied again.  DSOF ¶ 50.  In January 2019, Eysenbach and Vrotsos interviewed Choy and nine other internal and external candidates.  They ended up selecting Therese Reardon (then sixty years old), who had received the highest interview score.  *See id.*  Choy (then sixty-six years old) scored eighth out of the ten candidates.  *Id.* ¶¶ 51, 53.

Before becoming a Foreman, Reardon had worked at the District as a Class II Floriculturist from 2006 to 2019.  Prior to that, she had served as a greenhouse manager at a conservatory operated by the Mount Prospect Park District from 2001 to 2004 and as a grower at the Chicago Botanic Garden from 2004 to 2006.  *See id.* ¶ 53.  Both Eysenbach and Vrotsos testified that Reardon interviewed well.  Eysenbach was impressed by Reardon's experience at the Chicago Botanic Garden and thought she had a "comprehensive vision" of the job, *id.* ¶ 55, as well as a "clear understanding" of its requirements.  *Id.* ¶ 56.  Vrotsos, too, stated that Reardon demonstrated a "broad perspective" on her prospective duties as a Foreman, *id.* ¶ 58, and noted that she gave a particularly detailed answer to one of the plant identification questions.  *See id.* ¶ 57.

Choy also had relevant experience in horticultural management and supervisory experience given his responsibilities as a greenhouse manager at the Kilbourn Park Organic Greenhouse and as a Class II Floriculturist.  PSOAF ¶ 12; *see* DSOF Ex. 21, 8/24/18 Choy Appl., ECF No. 69-1.  But, according to Eysenbach and Vrotsos, Choy did not interview as well as Reardon.

Eysenbach testified that Choy did not respond well when asked why he wanted to be a Foreman and noted that, when asked a question about challenges facing the conservatories, Choy identified a problem that did not relate to the Foreman's job duties. DSOF ¶ 59. On her rating form, Eysenbach noted that she found Choy's answers to questions about staff motivation and plant maintenance to be "simplistic" and not indicative of someone with extensive supervisory experience. *Id.* ¶¶ 62–64; *see* DSOF Ex. 54, 1/8/19 Choy Interview Rating Form—Eysenbach at 1, ECF No. 69-1. Eysenbach also wrote that Choy came off as "angry and defensive" during the interview. Finally, she noted that Choy had ended the interview with a question asking why he had not been promoted in the past, which Eysenbach felt was "inappropriate" for a job interview. 1/8/19 Choy Interview Rating Form—Eysenbach, at 2.

Vrotsos also testified that Choy did not seem to understand the day-to-day responsibilities of the Foreman position during the interview. DSOF ¶ 69. Vrotsos's "overall impression of Choy from his interview was that Choy was someone who was better with growing plants than he would be with leading people or managing an operation." *Id.*

For his part, Choy claims that the District's interview process is administered unfairly and contrary to District policy and that the scores are not probative of a candidate's qualifications. *See* PSOAF ¶ 5; Pl.'s Resp. Def.'s Mot. Summ. J. ("Pl.'s Mem.") at 4–5, ECF No. 77. Instead, Choy claims, the scores reflect the interviewers' subjective assessments of the candidate's interviewing abilities. PSOAF ¶ 5(p); *see*

*id.* ¶¶ 5(g)–(p); ¶¶ 6–7.  In Choy's view, he "had more horticultural education, more horticultural experience and more supervisory experience than each of the other five applicants who applied for the Foreman post."  Pl.'s Mem. at 5.  Yet, because of the District's interview policies, Choy argues that his qualifications were ignored and that he was passed up in favor of Reardon.

Choy filed a charge of race and age discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 6, 2018.[4]  *See* EEOC Charge.  The EEOC issued Choy a Notice of Right to Sue on April 1, 2019.  DSOF Ex. 3, Notice of Right to Sue Letter, ECF No. 69-1.  Choy timely filed a complaint against the District alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and age discrimination in violation of the ADEA.  *See* Compl., ECF No. 1.  After Choy voluntarily dismissed his race discrimination claim, *see* ECF No. 61, the District moved for summary judgment as to his ADEA claim.

## II.  Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The evidence considered for summary judgment "must be admissible if offered at trial, except that affidavits, depositions, and other written forms of testimony can substitute for live testimony."  *Malin v. Hospira, Inc.*, 762 F.3d 552, 554–55 (7th Cir. 2014).  In reviewing a motion for summary judgment,

---

[4]     Choy filed his charge with the Illinois Department of Human Rights ("IDHR"), which is considered to be a filing with the EEOC for statute of limitations purposes because the EEOC and the IDHR have a work-sharing agreement.  *See* 775 Ill. Comp. Stat. 5/7A-102.

the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013).

The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party must then "come forth with specific facts showing that there is a genuine issue for trial." *LaRiviere v. Bd. of Trs. of S. Ill. Univ.*, 926 F.3d 356, 359 (7th Cir. 2019) (quoting *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015)).

To satisfy that ultimate burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor," *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[S]ummary judgment will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

## III.  Analysis

An ADEA claim requires the plaintiff to show that "but for his age, the adverse action would not have occurred." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 719 (7th Cir. 2018) (quoting *Martino v. MCI Commc'ns Serv., Inc.*, 574 F.3d 447, 455 (7th Cir. 2009)).  Both parties structure their arguments around the familiar *McDonnell Douglas* burden-shifting framework, 411 U.S. 792, 802–03 (1973), which also applies

in ADEA cases.[5]  *See Skiba*, 884 F.3d at 719.

In ADEA failure-to-promote cases, the *McDonnell Douglas* framework first requires a plaintiff to establish a *prima facie* case of discrimination by proving that: (1) they fall within the ADEA's protected class, (2) they were qualified for the position sought, (3) they were rejected for the position, and (4) the position went to someone outside the protected class (or substantially younger) who was not better qualified. *Barnes v. Bd. of Trs. of Univ. of Ill.*, 946 F.3d 384, 389 (7th Cir. 2020); *Vaughn v. CA Techs., Inc.*, 169 F. Supp. 3d 833, 843 (N.D. Ill. 2016).  "If the plaintiff meets each element of her prima facie case, 'the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason'" for the failure to promote.  *Skiba*, 884 F.3d at 719 (quoting *Carson v. Lake Cnty.*, 865 F.3d 526, 533 (7th Cir. 2017)).  If the defendant does so, "the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual."  *Id.* (quoting *Simpson v. Franciscan All., Inc.,* 827 F.3d 656, 661 (7th Cir. 2016)).  "[B]ecause the prima facie and pretext inquiry often overlap," if a defendant offers a nondiscriminatory reason for its actions, the Court "can proceed directly to the pretext inquiry."  *Barnes*, 946 F.3d at 389.  Finally, even though the parties employ the *McDonnell Douglas* framework, the bottom-line inquiry is whether, taking all of the plaintiff's evidence as a whole, a reasonable jury could find that the District discriminated against Choy on account of his age.  *See Ortiz v. Werner Enters.*, 834 F.3d 760, 765 (7th Cir. 2016).

---

[5]     Courts frequently borrow from Title VII case law when evaluating ADEA claims. *See, e.g.*, *Levin v. Madigan*, 697 F. Supp. 2d 958, 973 (N.D. Ill. 2010).  To the extent that the law is not unique to the ADEA, the Court will do the same.

Choy has challenged two hiring decisions: the August 2018 decision, which resulted in no candidate being promoted, and the January 2019 decision, after which Therese Reardon was hired. The parties focus most of their arguments on the latter decision, so the Court will begin there.

## A.    Legitimate, Nondiscriminatory Reason

Regarding the District's decision to promote Reardon instead of Choy in January 2019, the Court bypasses the elements of the prima facie case because the District has provided a legitimate, nondiscriminatory reason for its decision: Eysenbach and Vrotsos thought Reardon was better suited for the Foreman position. *See* DSOF ¶ 55; Mem. Law Supp. Def.'s Mot. Summ. J. at 7, ECF No. 68. Both interviewers testified that Reardon showed a well-rounded understanding of the Foreman's job responsibilities and that she gave good answers to several interview questions. *See* DSOF ¶¶ 55–58. By contrast, they stated that Choy lacked perspective and an accurate understanding of the job, and that he gave irrelevant or simplistic answers to several interview questions. *See id.* ¶¶ 59, 62–65. Accordingly, the District has met its burden of production. *See Barnes*, 946 F.3d at 389 ("[S]electing someone that [the] employer honestly believes is better qualified for [the] position is [a] legitimate nondiscriminatory reason." (citing *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 838–39 (7th Cir. 2009)); *Outley v. City of Chi.*, 354 F. Supp. 3d 847, 865 (N.D. Ill. 2019) (plaintiff's unsatisfactory interview responses constituted legitimate nondiscriminatory reason).

## B.    Pretext

Because the District has offered a nondiscriminatory reason for hiring Reardon, in order to survive summary judgment, Choy must put forth evidence showing that Eysenbach and Vrotsos's evaluation of Reardon as better suited for the job was "not 'just faulty reasoning or mistaken judgment,'" but was "a lie, specifically a phony reason." *Barnes*, 946 F.3d at 389 (alteration omitted) (quoting *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008)). Viewing the record in Choy's favor and providing him with the benefit of all reasonable factual inferences, the Court concludes that Choy has not done so.

### 1. Remarks from Management

First, Choy points to a number of ageist remarks made by District management. Comments such as these can create an inference of discrimination if they are "(1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action." *Teruggi v. CIT Grp./Cap. Fin., Inc.*, 709 F.3d 654, 661 (7th Cir. 2013) (quoting *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007), *overruled on other grounds by Ortiz*, 834 F.3d 760).

Here, Choy states that Gilbert, his supervisor, repeatedly asked an older worker, Mark Kluber, "when he's retiring." DSOF Ex. 17, Choy Dep. at 139:2–5, ECF No. 69-1. Choy also claims that Sally Wheeler, another Floriculturist, "had heard Mary Eysenbach ask Mark Kluber at least ten times on separate occasions when he was going to retire." Pl.'s Mem. at 8. For the purpose of summary judgment, the Court accepts that Gilbert and Eysenbach made these statements.[6] But Choy has

---

[6] The District urges that these comments are inadmissible hearsay because Choy heard about them from other employees. But under Federal Rule of Evidence 801(d)(2)(D), a

not met his burden to show that the statements support an inference of discrimination. As to Gilbert's comments, Choy has not presented any evidence that Gilbert was a relevant decisionmaker or that Gilbert made the statement around the time of either decision. Nor does Choy provide any evidence that Gilbert's statement to Kluber had anything to do with Choy's not being promoted.

Nor can Choy rely on Eysenbach's reported statements. Although Eysenbach was a decisionmaker, Choy has not established when these statements were made. And, once more, Choy has not shown how the statements to Kluber related to the August 2018 or January 2019 decisions not to promote Choy. *See Skiba*, 884 F.3d at 721.

The Seventh Circuit's decision in *Skiba*, 884 F.3d 708, is instructive. In *Skiba*, the plaintiff, who sued his employer for age discrimination under a failure-to-promote theory, introduced a comment from a hiring manager to an HR associate about another candidate being "close to retirement and . . . using the [promotion] opportunity to get back to Michigan . . . so he could retire." *Id.* at 721. Even though the statement was made by a decisionmaker and related to the hiring process, the court found the statement nonprobative. *See id.* at 721–22. First, it explained that

---

statement is not hearsay if (1) it is offered against the opposing party; (2) it is made by the party's employee; and (3) it concerns a matter within the scope of the employment relationship. *Fischer v. Avanade, Inc.* 519 F.3d 393, 405 n.4 (7th Cir. 2008). The statements at issue here concerned when Kluber would retire, which is a human resources issue within the scope of Gilbert and Eysenbach's supervisory duties. And even if Wheeler was acting outside the scope of her employment when she told Choy about Eysenbach's comments, she has testified to hearing Eysenbach make them. *See* PSOAF Ex. 19, Wheeler Decl. ¶¶ 4–5, ECF No. 76-1.

"the probative value of a comment concerning a separate, unrelated employee is limited at best." *Id.* at 721. "Moreover," the court went on, "courts cannot necessarily 'equate retirement eligibility with age' because 'eligibility for retirement may be based on age, years of service, or a combination of the two.'" *Id.* (quoting *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 229 (7th Cir. 2017)). Because the plaintiff in *Skiba* had not provided any evidence that retirement eligibility correlated with age, the court refused to "equate the hiring manager's comments about an employee's impending retirement with an inappropriate focus on age." *Id.* at 722.

The comments by Gilbert and Eysenbach are even less probative than the statement in *Skiba*. As in that case, Gilbert and Eysenbach's statements were directed at unrelated third parties, and Choy has not put forth evidence permitting the inference that the references to retirement had anything to do with Kluber's age. Furthermore, the statements here are even less connected to the purported discrimination than the statement in *Skiba*, because the comment in that case was at least made in the context of the promotion process. Choy, by contrast, has not shown any connection between the comments to Kluber and the selection of candidates for promotion. Accordingly, the Court concludes that Gilbert's and Eysenbach's are insufficient to create a genuine issue of fact as to pretext.

## 2. Interview Process

Choy makes much of the purported deficiencies in the interview process, arguing, among other things, that the interview scores are impermissibly subjective; that the interviewers are prohibited from asking follow-up questions that would give

them needed information on the candidates' qualifications; and that candidates are selected based on their interviewing ability rather than their actual qualifications. He also identifies numerous problems with his particular interview. For example, according to Choy, Eysenbach and Vrotsos neglected to consider the supervisory experience listed on his application and failed to ask him any follow up questions that would have revealed his superior qualifications, explaining his low score.

Even if taken as true, however, none of these contentions support the proposition that the District's nondiscriminatory reasons for passing Choy up for promotion were pretextual. At most, they show that Eysenbach and Vrotsos erred in picking the wrong candidate or that the interview protocols were inadequate. But demonstrating that the defendant improperly evaluated candidates is not enough; in order to show pretext, Choy must show that Eysenbach and Vrotsos's proffered rationales were insincere. *See Barnes*, 946 F.3d at 389–90; *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002) ("'Pretext for discrimination' means more than an unusual act; it means something worse than a business error; 'pretext' means deceit used to cover one's tracks." (quoting *Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1005 (7th Cir. 2001))).

On this issue, the Court finds *Barnes*, 946 F.3d 384, illuminating. In that case, a Black employee interviewed for a promotion to chief engineer at the University of Illinois, but the university hired a white applicant instead. *Barnes*, 946 F.3d at 387. The university offered a legitimate, nondiscriminatory reason for promoting the white candidate: he "articulated the most thoughtful approach to taking over the

14

position" and referenced specific experience in the interview that was relevant to the chief engineer's duties. *Id.* at 389. To prove pretext, the plaintiff argued that the interview process was unfair to him because it was "unstructured [and] subjective," and that he was objectively more qualified than the other applicant because he scored higher on a performance review. *Id.* at 390. The Seventh Circuit held that neither line of reasoning established pretext. The fact that the interview process was not "accurate, wise, or well-considered" was not enough because it "[did] not make [the defendant's] stated reason for hiring [the other candidate] a lie." *Id.* (quoting *Bates v. City of Chi.*, 726 F.3d 951, 956 (7th Cir. 2013)). As to qualifications, the court noted that whether it was wise to disregard the plaintiff's higher performance review was irrelevant, because the pretext inquiry asks only whether the defendant's reasons were dishonest, which the plaintiff had not shown. *See id.*

Like the plaintiff in *Barnes*, Choy has attacked the efficacy of the interview process and Eysenbach and Vrotsos's judgment about who was most qualified, but Choy has not put forth any evidence that these faults were, in his words, "a mask for discrimination." Pl.'s Mem. at 10. The closest he comes is his claim that Eysenbach ignored the supervisory experience listed on his application and misrepresented it on the rating form. But Choy does not argue—much less introduce facts to show—that Eysenbach's oversight was calculated to disguise her bias against older applicants.

Choy correctly points out that, in some circumstances, a plaintiff can establish pretext by showing that she "was in fact more qualified for the position than the individual promoted." *Hall v. City of Chi.*, 52 F. App'x 259, 264 (7th Cir. 2002)

(alterations omitted).  But in order to infer pretext from superior qualifications alone (*i.e.,* without evidence of dishonesty), there must be a "substantial gap in credentials." *Barnes*, 946 F.3d at 390; *see Millbrook*, 280 F.3d at 1179 (the disparity must "jump off the page and slap you in the face" (quoting *Deines v. Tex. Dep't of Prot. and Regul. Servs.*, 164 F.3d 277, 279 (5th Cir. 1999))).  Even on the most generous reading of Choy's evidence, he was not "substantially" more qualified than Reardon.  Choy had more years of horticultural experience, but both candidates had only sporadic supervisory experience.  *Compare* 8/24/18 Choy Appl. at 1, *with* 8/26/18 Reardon Appl. at 2.  And although Choy leans heavily on work experience, related experience is only one of three factors the District considers in scoring the interviews.  *See* DSOF ¶ 17.

### 3.  Pre-2018 Hiring Decisions

Choy also points to the District's pre-2018 promotion decisions as support for his age discrimination claims.  The District argues that these unsuccessful applications for promotions cannot serve as "background evidence" for Choy's timely ADEA claim.  *See* Def.'s Mem. at 12–13 (citing *Jackson v. City of Chi.*, 552 F.3d 619 (7th Cir. 2009)).  *But see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Nor does [Title VII] bar an employee from using [time-barred] acts as background evidence in support of a timely claim.");[7] *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977); *Kellogg v. Ball State Univ.*, 984 F.3d 525 (7th Cir. 2021);

---

[7]     *Jackson* distinguished *Morgan* on grounds that *Morgan* merely "allows [the use of time-barred acts] in certain hostile work environment cases." 552 F.3d at 624.  But other Seventh Circuit cases have not read *Morgan* so narrowly.  *See, e.g.*, *Malin*, 762 F.3d at 561 (*Morgan* allows any "relevant" time-barred acts of discrimination to be used as evidence in support of timely claims); *Fischer*, 519 F.3d at 401.

*Malin*, 762 F.3d at 561; *O'Neal v. City of Chi.*, 588 F.3d 406, 409 (7th Cir. 2009); *West v. Ortho–McNeil Pharm. Corp.*, 405 F.3d 578, 581 (7th Cir. 2005).

The Court need not determine whether the District is correct. Even if the Court were to consider the District's pre-2018 promotion decisions, Choy has not created a triable issue to overcome summary judgment.

As to some of the promotion decisions, Choy fails to provide evidence of the age of the promoted candidate. Choy does not include, in either his response to the District's statement of facts or his own statement of additional facts, the ages of Gilbert, Durnik, Ramirez, Ritte, or Toth. *See* Pl.'s Resp. DSOF ¶¶ 30–48; *see generally* PSOAF. And, again, nothing in the record indicates that the relevant decisionmakers did not honestly believe that the promoted candidates were better qualified. Indeed, one of the candidates promoted over Choy was older than him, *see* DSOF ¶ 29, and the others had qualifications that he did not. For example, Gilbert, who was promoted to Foreman over Choy in 2014, had years of relevant experience "acting up" into the Seasonal Foreman position. *Id.* ¶ 32; *see* DSOF Ex. 15, Eysenbach Decl. ¶ 4, ECF No. 69-1; DSOF Ex. 16, Barrett Decl. ¶ 4, ECF No. 69-1. Ritte and Toth, who were promoted to Foreman over Choy in 2017, were Class I Floriculturists, meaning they had more extensive supervisory duties than Choy, who was a Class II Floriculturist. *See* DSOF ¶ 46; DSOF Ex. 11, CPD–Floriculturist, Class I Job Description, ECF No. 69-1. And Vrotsos, who was promoted to Deputy Director over Choy in 2017, worked for two years at another garden in a role that the interviewers believed to be comparable to the Deputy Director position. DSOF ¶¶ 39, 41; DSOF

17

Ex. 35, 7/17/17 Vrotsos Interview Rating Form—Barrett, ECF No. 69-1; DSOF Ex. 37, 7/17/17 Vrotsos Interview Rating Form—Eysenbach, ECF No. 69-1. Without any evidence that the District's assessments of these qualifications were dishonest, no reasonable jury could find that the pre-2018 hiring decisions demonstrate that the District's reasons for not promoting Choy were a lie. *See Barnes*, 946 F.3d at 389.

## C.     Totality of the Evidence Inquiry

### 1.     Events of January 2019

Having reviewed each strand of Choy's evidence as to the January 2019 decision, the Court now considers all of his evidence as a whole, and "ask[s] whether the totality of the evidence shows discrimination, eschewing any framework or formula." *Igasaki v. Ill. Dep't of Fin. and Pro. Regul.*, 988 F.3d 948, 958 (7th Cir. 2021) (citing *Ortiz*, 834 F.3d at 765). It does not. Even when all factual disputes are resolved in Choy's favor, the Court concludes that no reasonable jury could find on this record that the District promoted Reardon instead of Choy because of Choy's age.

Reardon was only six years younger than Choy, had equivalent supervisory experience, and (in the interviewers' views) gave better answers to the interview questions. As discussed, the inadequacies of the interview process upon which Choy relies do not give rise to an inference of discrimination. Beyond that, Choy's evidence is comprised only of the sporadic retirement comments directed at Kluber and the fact that Choy had been passed over for promotion many times, often (but not always) in favor of younger applicants. The remarks about retirement carry little weight because they were not directed at Choy and had nothing to do with the hiring process.

18

And Choy has not provided any evidence that the District's nondiscriminatory reasons for hiring younger applicants in the past were dishonest or intended to disguise discriminatory animus. In the end, Choy's case comes down to unsupported speculations that the District has a "known preference" for promoting younger workers and that, if the interview process were different, he would have been promoted. Such stray remarks and speculative inferences are not enough to avoid summary judgment. *See Igasaki*, 988 F.3d at 961.

### 2.      Events of August 2018

Viewing all of the evidence as a whole, the Court also concludes that no reasonable jury could find from this record that the District's decision not to promote Choy in August 2018 (when no candidate was hired) was based on his age. Choy again has not offered any evidence that the District manipulated or depressed his interview score in an effort not to promote him. *See Barnes*, 946 F.3d at 389–90; *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 465 (7th Cir. 2014) (in order to show that a performance assessment is pretextual, the plaintiff must "rais[e] a genuine issue about the honesty, not the accuracy" of the assessment); *cf. Anderson v. Chi. Transit Auth.*, No. 08–CV–1347, 2010 WL 331722, at *11 (N.D. Ill. Jan. 22, 2010) (low interview scores supported inference of discrimination where "[the] interview scores were altered and . . . an interviewer who had left the room during [plaintiff's] interview gave him poor scores for the questions that she missed"). And once more, Choy has not pointed to anything casting doubt on the veracity of Eysenbach's and Vrotsos's evaluations. He also has not shown that his qualifications were so much

higher than the rest of the applicants that discrimination can be inferred solely based upon the District's failure to promote him. *See Millbrook,* 280 F.3d at 1179–80. For these reasons, the Court grants Defendant's motion for summary judgment as to Choy's claims based upon the August 2018 interview process as well.

## IV.  Conclusion

For the reasons stated above, the Court concludes that no reasonable jury could find that the District failed to promote Choy on the basis of his age based on this record. Therefore, the  Court grants the District's motion for summary judgment and enters judgment in the District's favor. Case terminated.

**IT IS SO ORDERED.**                    **ENTERED: 3/24/22**

_____
**John Z. Lee**
**United States District Judge**